

**U.S. Department of Justice**

*Joshua S. Levy*
*Acting United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

July 25, 2024

Paul V. Kelly
Jackson Lewis P.C.
75 Park Plaza
4th Floor
Boston, MA 02116

    Re:    <u>United States v. Hugo Giovanni Moraes,</u>
            Criminal No. 3:21-cr-10176-ADB

Dear Mr. Kelly:

    The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, Hugo Giovanni Moraes ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

    1.    <u>Change of Plea</u>

    Defendant will plead guilty to count 1 of the Second Superseding Indictment: conspiracy to encourage and induce an alien to come to, enter, and reside in the United States for commercial advantage or private gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and (B)(i). Defendant admits that Defendant committed the crime specified in this count and is in fact guilty of the count.

    Defendant agrees that the attached statement of facts is accurate. The U.S. Attorney reserves the right to provide additional facts to the Court and Probation relating to the offenses of conviction.

    The U.S. Attorney will move to dismiss counts 2 through 6 of the Second Superseding Indictment after sentencing.

2. <u>Penalties</u>

Defendant faces the following maximum penalties on count 1: for each alien in respect to whom such violation occurs, incarceration for 10 years; supervised release for 3 years; a fine of $250,000; a mandatory special assessment of $100, plus $5,000 pursuant to 18 U.S.C. § 3014(a)(5) if the defendant is non-indigent; restitution; and forfeiture to the extent charged in the Second Superseding Indictment.

Defendant understands that, if Defendant is not a United States citizen by birth, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3. <u>Sentencing Guidelines</u>

The U.S. Attorney agrees, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 15:

    a) Defendant's base offense level is 12, because the defendant will be convicted under 8 USC § 1324 (USSG § 2L1.1(a)(3));

    b) Defendant's offense level is increased by 6, because the offense involved the smuggling, transporting, or harboring of 25-99 aliens (USSG § 2L1.1(b)(2)(B)); and

    c) Defendant's offense level is decreased by 3, because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1).

Defendant agrees with these calculations but reserves the right to argue that the offense involved the smuggling, transporting, or harboring of only 6-24 aliens, and therefore Defendant's offense level is increased by only 3 (USSG § 2L1.1(b)(2)(A)).

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at the change of plea hearing or at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crimes to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a

new federal or state offense, has in any way obstructed justice, including by tampering with, intimidating, or retaliating against a witness or possible witness, or has made any effort, direct or indirect, to identify or confirm the identity of anyone who cooperated in the investigation or prosecution of this case. Refraining from the conduct prohibited by subsection (b) of this paragraph shall be a continuing obligation before and after sentencing, and a violation of this provision shall trigger the provisions of paragraph 8 below.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4.  Sentence Recommendation

The U.S. Attorney agrees to recommend the following sentence to the Court:

a) incarceration at the low end of the Guidelines sentencing range as calculated by the Court at sentencing, excluding departures;

b) a fine within the Guidelines sentencing range as calculated by the Court at sentencing, excluding departures, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

c) 36 months of supervised release;

d) a mandatory special assessment of $5,100, which Defendant must pay to the Clerk of the Court by the date of sentencing;

e) restitution as ordered by the Court; and

f) forfeiture as set forth in Paragraph 6.

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately, and further agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

5.  Waiver of Appellate Rights and Challenges to Conviction or Sentence

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant

has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

b) Defendant will not challenge Defendant's <u>sentence</u>, including any court orders related to forfeiture, restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence, regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

6. <u>Forfeiture</u>

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

a. $25,000 of the $60,326 in United States currency, seized on October 4, 2022, at The Dog House Bar and Grill, 434 Main Street, Woburn, MA; and

b. $25,000 of the $211,912 in United States currency, seized on October 4, 2022, at Taste of Brazil restaurant, 414 Main Street, Woburn, MA.

Defendant admits that these assets ($50,000 in total) are subject to forfeiture on the grounds

that they constitute, or are derived from, proceeds of Defendant's offense and/or were used to facilitate Defendant's offense. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

Defendant agrees to assist fully in the forfeiture of the foregoing assets. Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets. This waiver of claims specifically excludes the following seized property: $35,326 in United States currency, seized on October 4, 2022, at The Dog House Bar and Grill, 434 Main Street, Woburn, MA and $186,912 in United States currency, seized on October 4, 2022, at Taste of Brazil restaurant, 414 Main Street, Woburn, MA (collectively the "Returned Currency"), which the United States has agreed to return to Defendant. Defendant agrees that the Returned Currency shall be paid forthwith upon its release by the United States to the U.S. Small Business Administration (SBA) in partial repayment of loans made to the restaurants, The Dog House Bar and Grill and Taste of Brazil by the SBA. Defendant shall provide to the U.S. Attorney proof of such payment within two business days of the release of the funds. Defendant hereby waives any and all claims arising from or relating to the seizure, detention, and return of the Returned Currency.

7. <u>Civil Liability</u>

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

8. <u>Breach of Plea Agreement</u>

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement or that could have been charged based on the statement of facts attached hereto, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

9. <u>Who is Bound by Plea Agreement</u>

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

10. <u>Modifications to Plea Agreement</u>

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

\*   \*   \*

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney James D. Herbert.

Sincerely,

JOSHUA S. LEVY

                                Acting United States Attorney

**By:**        _____
                              Elizabeth Riley
                              Chief, Civil Rights and Human Trafficking Unit

                              Kelly Begg Lawrence
                              James D. Herbert
                              Samuel R. Feldman
                              Assistant U.S. Attorneys

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crimes I am pleading guilty to, and the maximum penalties for those crimes. I have discussed the Sentencing Guidelines with my lawyer, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me, and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offenses. I believe this Agreement is in my best interest.

                              _____
                              Hugo Giovanni Moraes
                              Defendant

Date: 9-2-24

I certify that Hugo Giovanni Moraes has read this Agreement and that we have discussed what it means. I believe Hugo Giovanni Moraes understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
Paul V. Kelly
Attorney for Defendant

Date: 9-3-24

Statement of Facts

Between in or about July 2016 through in or about October 2022, CHELBE WILLAMS MORAES ("CHELBE"), JESSE JAMES MORAES ("JESSE"), HUGO GIOVANNI MORAES ("HUGO"), And EBERSON LUIZ VANZ, A/K/A GRANDE ("VANZ"), conspired together and with others to encourage and induce undocumented migrants from Brazil (collectively "Migrants," or, in the language of the relevant statutes, "aliens") to come to, enter, and reside in the United States ("migrant smuggling," or, in the language of the relevant statutes, "alien smuggling"). The Migrants were not United States citizens and did not have prior official authorization from the United States government to come to, enter, or reside in the United States. The Migrants and their families paid money, generally between $12,000 and $22,000, to CHELBE and others, to be smuggled into the United States.

Among the manner and means by which CHELBE, JESSE, HUGO, VANZ, and other coconspirators carried out the conspiracy were the following:

    a.    Chelbe recruited and otherwise negotiated the terms of the smuggling with the Migrants in Brazil;

    b.    Chelbe arranged and facilitated the travel of the Migrants from Brazil to Cancun and elsewhere in Mexico and then to northern Mexico, including to Ciudad Juarez, before their illegal entry into the United States by, among other things, arranging and paying for the Migrants' ground and air travel and arranging and paying for the Migrants to stay in hotels, motels and the homes of coconspirators, associates, and other Migrants throughout their smuggling trips;

    c.    Chelbe provided the Migrants with methods of securely communicating with him during their smuggling trip and instructed them to destroy and replace the

subscriber identity module ("SIM card") in their phones before crossing into the United States so that U.S. immigration authorities would not discover evidence of the scheme;

  d. Chelbe worked with other human smugglers in Mexico who facilitated the smuggling trips by, among other things, arranging and paying for ground transportation and hotel stays, making sure the Migrants were not apprehended by immigration authorities until they were in the United States, driving the Migrants to the United States border and directing them where to cross and surrender to United States authorities at points other than official United States Ports of Entry;

  e. Chelbe encouraged the Migrants to make fraudulent claims of asylum and familial relationships (*e.g.*, parent and minor child) in the United States and provided them with false documentation to support their claims;

  f. Chelbe provided the Migrants with fraudulent information concerning U.S. points of contact and instructed them to give this information to U.S. immigration authorities when they were apprehended in the United States;

  g. Chelbe arranged and paid for the Migrants' travel to their final destination in the United States once they were released from immigration detention;

  h. Chelbe coordinated with relatives and associates of his in the Boston area to meet certain of the Migrants when they arrived in Boston and provide them with transportation from the airport and initial housing in the Boston area if needed;

  i. The defendants helped Migrants secure longer term housing, including in apartments owned by relatives of HUGO.

  j. The defendants arranged for some of the Migrants to work in restaurants in Massachusetts owned and operated by JESSE and HUGO, including Tudo Na Brasa/Taste

of Brazil and The Dog House Bar and Grill, both in Woburn, Massachusetts, and paid the Migrants either entirely or partly in cash unless and until the Migrants obtained identification documents, at which point they would be paid at least partly by check;

    k.    The defendants encouraged the Migrants working for JESSE and HUGO to obtain false identification documents and referred them to MARCOS CHACON GIL, a/k/a MARQUITO," ("CHACON") to obtain such false identification documents;

    l.    Agreeing that some of the Migrants could pay off some of their smuggling fee once they reached the United States; and

    m.    Chelbe accepted smuggling debt payments via direct payment, the withholding of wages, or collection by relatives and other associates within and outside the United States.

HUGO's primary role in the conspiracy involved: (i) hiring and managing the Migrants who worked at Tudo Na Brasa/Taste of Brazil and The Dog House Bar and Grill, including setting their hours and work locations and paying their wages; and (ii) helping Migrants find housing, often in apartments owned by a relative of his, and by receiving or holding rent payments in cash at his restaurants.

When hiring Migrants, HUGO would not require them to show identification and would occasionally fail to fill out an I-9 form, even though he knew one was required. When compensating Migrant workers at his restaurants, HUGO would pay them initially in cash, and would only pay wages by check after the Migrants had obtained identification documents.

While this case was pending, HUGO had communications, in person or by phone or text message, with one of the migrants who previously worked at his restaurants, and who he thought might be cooperating against him. These communications, most of which were initiated by the

migrant, were arguably in violation of HUGO's conditions of release, which limited his communications with this migrant to discussing restaurant-related menu and food issues.